UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIANNE GROTH,                         :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :      Case No. 3:14-CV-01563 (RNC)
                                       :
GROVE HILL MEDICAL CENTER,             :
P.C.,                                  :
                                       :
        Defendant.                     :
                                       :

RULING AND ORDER

Plaintiff Brianne Groth brings this action against her former employer, Grove Hill Medical Center, P.C. ("Grove Hill"), alleging that it discriminated against her on the basis of a disability, failed to accommodate her disability and retaliated against her for opposing this unlawful conduct, in violation of the Americans with Disabilities Act (ADA) and Connecticut Fair Employment Practices Act (CFEPA).  The amended complaint also asserts state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, breach of the covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act.  The defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1]  For reasons that follow, the motion is granted.

_____

[1]This is Grove Hill's second motion to dismiss.  After it filed its first motion (ECF No. 12), Groth amended her complaint (ECF No. 16).  Grove Hill then brought this motion on the same grounds as the first.

1

I. Background

The amended complaint alleges the following.  In October 2012, plaintiff was hired as a receptionist at Grove Hill, a medical center located in New Britain.  Groth's work required her to wear a wireless earpiece.  At some point - just when is not clear - the earpiece caused her to develop an abscess behind her ear.  The abscess required medical attention, including a visit to the emergency room.

Groth informed the office manager, Gloria Irizarry, of the difficulty caused by the earpiece.  Other employees responded to Groth's complaint with "an escalation of abusive and hostile treatment."  Groth was "exposed to loud swearing and abusive language, as well as violent conduct that was directed at her."  ECF No. 16, at 3.  Groth tried to find a way to do her job without using the earpiece, but her employer demanded that she continue to wear it.  Id. at 3.

In May 2013, Groth received a written warning from Grove Hill.  The grounds for the warning were that she had (1) failed to wear the earpiece; (2) used a cellphone; (3) "wandered;" and (4) failed to properly address patient cancellations.  Id.  Groth determined "that she was being treated unfairly" and "made an appointment with the Human Resources person to address the written warning."  Id.

On May 23, when Groth was en route to an appointment with

2

Human Resources, she was confronted by Irizarry.  Irizarry said
that Grove Hill's deposits, for which Groth was responsible, were
short.  Groth denied the accusation.  It was "obvious" to Groth
that Irizarry had accosted her with an eye toward intimidating
her and delaying the meeting with Human Resources.  Id. at 4.
Groth managed to get away from Irizarry and proceeded to the
meeting, where she spoke with Human Resources Manager Laura
D'Avanzo.  Groth and D'Avanzo "reviewed, in detail, the warning
received by the plaintiff and the issues that were the subject of
the plaintiff's write-up . . . as well as the hostility issues in
the workplace that the plaintiff was experiencing."  Id.

A week later, Groth received a call from Grove Hill.  She
was informed that a committee had been formed to investigate her
complaint.  In addition, she was offered a position that would
permit her to work out of a different office.  Just four hours
later, however, Groth received word that she had been suspended.
Her status was soon altered from "suspended" to "paid leave."
Then, on June 10, she was fired.  Two hours after informing Groth
of her termination, Grove Hill explained its decision: an audit
of her computer revealed that she had accessed a patient file
without authorization.  Id. at 5.

II. Discussion

A Rule 12(b)(6) motion tests a complaint's legal
sufficiency.  To withstand such a motion, "a complaint must

3

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  Review under Rule 12(b)(6) occurs in two steps.  First, the court must separate the complaint's well-pleaded factual allegations from its legal conclusions.  Well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," must be disregarded.  Id.  Second, the court must determine whether the well-pleaded facts in the complaint support a plausible inference that the plaintiff is entitled to relief.  Id.  This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  A complaint containing facts "that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

A. Count One: ADA and CFEPA

     Plaintiff alleges that Grove Hill discriminated against her because of her disability - the abscess caused by the earpiece - and failed to accommodate her condition, in violation of both the

ADA and CFEPA.  She also asserts that Grove Hill violated the antiretaliation provisions of these statutes.  Grove Hill argues that Groth has failed to state a claim for discrimination or failure to accommodate because she has not plausibly alleged that she has a disability and that she has failed to state a claim for retaliation because she has not plausibly alleged that she engaged in any protected activity.  I agree.

1. Discrimination and Failure to Accommodate Under the ADA and CFEPA

To adequately plead a claim of discrimination under the ADA, plaintiff must allege that Grove Hill is covered by the ADA; she has or was regarded by Grove Hill as having a disability within the meaning of the ADA; she was qualified to perform the essential functions of her job, with or without reasonable accommodation; and she suffered an adverse employment action because of her disability or perceived disability.  Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005).  To adequately plead a failure-to-accommodate claim, plaintiff must allege that she has a disability within the meaning of the statute; Grove Hill is covered by the statute and had notice of her disability; she was able to perform the essential functions of her job with reasonable accommodation; and Grove Hill refused to provide such an accommodation.  McBridge v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009).

Each ADA claim, then, requires plaintiff to plausibly allege

that she has a disability.  Under the ADA, a plaintiff has a
disability if she suffers from "a physical or mental impairment
that substantially limits one or more of [her] major life
activities" or is regarded as suffering from such an impairment.
Capobianco, 422 F.3d at 56.  Grove Hill argues that plaintiff
fails to allege that her impairment, an infection caused by
wearing the earpiece, limited a major life activity.  I agree.

     As far as the complaint alleges, Groth's impairment affected
her only insofar as it prevented her from wearing the earpiece,
which Grove Hill required her to wear in order to perform her
duties as a receptionist.  An impairment that affects a
plaintiff's ability to work in only a narrow range of jobs does
not qualify as a disability under the ADA.  See Giordano v. City
of New York, 274 F.3d 740, 747-48 (2d Cir. 2001) ("The inability
to perform a single, particular job does not constitute a
substantial limitation in the life activity of working."
(internal quotation marks and citations omitted)); Wernick v.
Fed. Reserve Bank of New York, 91 F.3d 379, 384 (2d Cir. 1996)
("An impairment that disqualifies a person from only a narrow
range of jobs is not considered a substantially limiting one.");
Curcio v. Bridgeport Bd. of Educ., 477 F. Supp. 2d 515, 521 (D.
Conn. 2007) ("[T]o trigger the ADA's protection, the impairment
must significantly restrict the plaintiff's ability to perform
either a class of jobs or a broad range of jobs in various

classes . . . ." (internal quotation marks and citations
omitted)).  Assuming the abscess prevented the plaintiff from
wearing the ear piece, she has not alleged that she had a
disability under the ADA.  See Wegner v. Upstate Farms Co-op.,
Inc., 560 Fed. Appx. 22 (2d Cir. 2014)(plaintiff not disabled
because, although his inability to lift disqualified him from
working as a truck driver for his former employer, it was
"insufficient to show that he [was] disqualified from truck
driving positions generally." Id. at 24; see also Martinsky v.
City of Bridgeport, 814 F. Supp. 2d 130, 144 (D. Conn. 2011)
(plaintiff's anxiety disorder, which precluded him from working
for the Bridgeport Police Department but did not prevent him from
working in law enforcement generally, was not a disability).

Plaintiff's claim also faces a second hurdle: nothing in the
complaint indicates that her ear trouble was anything more than
transitory.  Although the 2008 amendments to the ADA and
accompanying regulations have made clear that short-term
impairments can qualify as disabilities if they are sufficiently
severe, see, e.g., 29 C.F.R. § 1630.2(j)(1)(ix) (app), an
impairment's duration is still relevant in assessing whether it
is disabling.  See De La Rosa v. Potter, 427 Fed. Appx. 28 (2d
Cir. 2011) ("A temporary impairment lasting only a few months is,
by itself, too short in duration . . . to be substantially
limiting."); Kruger v. Hamilton Manor Nursing Home, 10 F. Supp.

3d 385, 389 (W.D.N.Y. 2014) ("Generally, short term, temporary restrictions are not substantially limiting and do not render a person disabled under the ADA."); Zick v. Waterfront Comm'n of N.Y. Harbor, No. 11 Civ. 5093 (CM), 2012 WL 4785703, at *5 (S.D.N.Y. Oct. 4, 2012) ("Plaintiff's broken leg is simply not an injury considered a 'disability' under the ADA.").  Plaintiff's allegations offer virtually no information about how long her impairment lasted.  The amended complaint alleges that she began working in October 2012 and received a warning concerning her failure to wear the earpiece in May 2013, but it provides no information about the duration of her medical trouble or the likelihood that it would persist over time.[2]  Its well-pleaded facts indicate only that at one time, her use of the earpiece caused inflammation and infection.  From such limited factual matter I cannot plausibly infer that Groth's impairment was disabling.  For this reason too her ADA discrimination and failure to accommodate claims must be dismissed.

Plaintiff's allegations also fall short of stating a claim for relief under CFEPA.  CFEPA, like the ADA, provides causes of action for discrimination and failure to accommodate, and like the ADA it requires a plaintiff to prove that she suffers from a

---

[2]The complaint states that the condition of Groth's ear "worsened over time" but says nothing about how long this period of time lasted.  Even if I can infer from the May warning that Groth's ear had not healed at that time, I have no information about when her trouble began.

disability.  The state statute does not oblige a plaintiff to establish that her impairment substantially affects a major life activity, but it does require that the impairment be "chronic." The courts have defined "chronic" to mean "marked by long duration or frequent recurrence" or "always present or encountered." Logan v. SecTek, 632 F. Supp. 2d 179, 184 (D. Conn. 2009).  In Setkoski v. Bauer, No. HHDCV116023082, 2012 WL 2044805 (Conn. Super. May 10, 2012), for example, the plaintiff alleged that she had missed three months of work due to anemia, a serious condition requiring surgery and a blood transfusion. Because the plaintiff failed to allege that "her condition [was] continuing or [would] require medication or additional procedures in the future," she did not state a claim under CFEPA.  Id. at 3. Similarly, pregnancy complications requiring an employee to miss two months of work have been held to fall short of disabling. Kucharski v. Cort Furniture Rental, 536 F. Supp. 2d 196, 202 (D. Conn. 2007), rev'd on reconsideration on other grounds, 594 F. Supp. 2d 207.  And in Wanamaker v. Westport Bd. of Educ., 899 F. Supp. 2d 193, 213 (D. Conn. 2012), the plaintiff alleged that she was required to miss a month or two of work because she suffered from transverse myelitis.  Because she pled "no other facts indicating that [her] condition [was] chronic," the court granted the defendant's motion to dismiss her CFEPA claim.

Here, the allegations in the amended complaint do not permit

the plausible inference that the abscess was "marked by long duration or frequent recurrence" or "always present or encountered."  Indeed, plaintiff does not allege that the abscess required her to miss significant time from work.

Accordingly, the claims under the ADA and CFEBA will be dismissed without prejudice.  If plaintiff can plausibly allege facts supporting an entitlement to relief under either statute, she may do so in an amended complaint.

2. Retaliation Under the ADA and CFEPA

To state a claim for retaliation under the ADA, a plaintiff must allege that: "(1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity."  Caskey v. Cnty. of Ontario, 560 Fed. Appx. 57, 58 (2d Cir. 2014).  CFEPA claims are analyzed the same way.  Gomez v. Laidlaw Transit, Inc., 455 F. Supp. 2d 81, 90 (D. Conn. 2006).  "Protected activity" is action taken "to protest or oppose statutorily prohibited conduct."  Rolfe v. Lawrence & Mem'l Hosp., No. 3:10 Civ. 80 (RNC), 2013 U.S. Dis. LEXIS 140400, at *14-15 (D. Conn. Sept. 30, 2013).  The conduct opposed by the plaintiff need not actually be prohibited by the ADA (or CFEPA), but the plaintiff must hold a "good faith, reasonable belief that the underlying employment practice [is] unlawful under the

statute." <u>Id</u>.

Here, the question is whether plaintiff ever voiced opposition to a practice she thought was unlawful under the ADA. An employee "opposing" unlawful conduct must make it clear that she believes the employer's conduct is discriminatory.  A generalized criticism of an employment practice made without reference to discrimination will not do.  See <u>Saviano v. Town of Westport</u>, No. 3:04 Civ. 522 (RNC), 2011 U.S. Dist. LEXIS 112722, at *14 n.8 (D. Conn. Sept. 30, 2011) ("Grievances are not generally considered protected activity when they fail to mention discrimination.").  It is insufficient to complain of conduct out of which a discrimination claim later arises; the complaint itself must put the employer on notice that the employee is complaining about discrimination.  In <u>Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons</u>, 842 F.2d 590 (2d Cir. 1988), for example, the plaintiff alleged that he had been fired after criticizing Columbia University for practicing racial discrimination in hiring.  But the plaintiff's complaints about hiring had not alleged unlawful discrimination.  They alleged only that Columbia was not abiding by its internal affirmative action program.  The Second Circuit therefore affirmed the district court's conclusion that the plaintiff had not opposed any unlawful practice.  <u>Id</u>. at 594; <u>see also Lewis v. Conn. Dep't of Corrs.</u>, 355 F. Supp. 2d 607, 617 (D. Conn. 2005) ("[T]he union

grievance . . . did not explicitly allege racial discrimination and thus could not be considered protected activity . . . ."); McDowell v. Home Depot, U.S.A., Inc., No. 3:02 Civ. 1294D, 2004 WL 594101, at *8 (N.D. Tex. March 9, 2004) ("[A plaintiff who opposes unlawful activity] must communicate to her employer her reasonable concerns that the employer has acted or is acting in a manner that is unlawful.").

Here, plaintiff does not plausibly allege that she communicated anti-discrimination concerns to Grove Hill.  She states that she made an appointment with Human Resources to "address the issuance of the written warning," which was predicated in part on her failure to wear the earpiece.  ECF No. 16, at 3.  She also states that during the meeting she "reviewed" the warning "in detail" and discussed "hostility issues" she was experiencing.  Id. at 4-5.  But she does not allege that she told Grove Hill she was concerned about discrimination.[3]  In the absence of an allegation that she voiced such a concern, her claim is insufficient.  Accordingly, the ADA and CFEPA retaliation claims will be dismissed without prejudice.

_____

[3]Groth also argues that in ¶ 9 of her complaint, she alleges that she told her employer her condition was disabling.  This argument is unavailing.  Advising an employer about one's disability can put the employer on notice of the disability and therefore bear on a discrimination claim.  But Groth's retaliation claim requires her to show that she went to her employer with a complaint about its unlawful conduct, not that she told her employer she was disabled.

B. Count Two: IIED

Defendant argues that plaintiff's IIED claim should be
dismissed because 1) she has failed to allege sufficient
emotional distress, and 2) she has failed to allege extreme and
outrageous conduct.  I agree with the second argument.

A plaintiff states a claim for IIED if she alleges: "(1)
that the actor intended to inflict emotional distress or that he
knew or should have known that emotional distress was the likely
result of his conduct; (2) that the conduct was extreme and
outrageous; (3) that the defendant's conduct was the cause of the
plaintiff's distress; and (4) that the emotional distress
sustained by the plaintiff was severe." Murray v. Bridgeport
Hosp., 40 Conn. Supp. 56, 62 (Conn. Super. 1984).  Liability
attaches only when the defendant's conduct is so extreme as to
"exceed[] all bounds usually tolerated by decent society."
Petyan v. Ellis, 200 Conn. 243, 253 (1985) (superseded by statute
on other grounds).

Grove Hill first argues that Groth has failed to plausibly
allege severe emotional distress.  I disagree.  Groth alleges
that Grove Hill's conduct caused her to suffer "anxiety,
depression, sleeplessness, nausea, headaches, and stress." ECF
No. 16, at 9.  Courts in this district have deemed similar
allegations sufficient at the pleadings stage. Craig v. Yale
Univ. Sch. of Med., 838 F. Supp. 2d 4, 12 (D. Conn. 2011)

(denying defendant's motion to dismiss when plaintiff alleged "severe emotional and psychological distress; trauma; sleeplessness; loss of appetite . . . and damage to his self-esteem and sense of self-worth").

I do agree with Grove Hill, however, that Groth has failed to allege extreme and outrageous conduct required to support a claim for intentional infliction of emotional distress.  None of the conduct described in the complaint, alone or in combination, suffices under this tort's rigorous standard.

Starting with the allegations relating to Grove Hill's behavior in firing Groth, none sets out sufficiently outrageous behavior.  That Grove Hill terminated Groth's employment with a retaliatory motive, even if true, is not enough to state a claim: "when the defendant is an employer, the court looks to the employer's conduct, not the motive behind the conduct, to determine if it was extreme or outrageous." Sarojak v. Metallics Group, No. 3:03 Civ. 1050 (DJS), 2004 U.S. Dist. LEXIS 21126, at *7 (D. Conn. Oct. 7, 2004) ("It is immaterial that Metallics may have acted out of a desire for retribution, because motive does not factor into the court's inquiry.").

Similarly, the allegation that Grove Hill fabricated an explanation for Groth's dismissal (namely, her unauthorized access of a patient record) is insufficient.  The Connecticut Appellate Court has held that employers levying very serious

14

accusations against employees – more serious than the accusation here – did not act "outrageously." <u>See, e.g., Carnemolla v. Walsh</u>, 815 A.2d 1251, 1260-61 (Conn. App. 2003) (affirming grant of summary judgment when employee was accused of embezzling company funds and dismissed); <u>Bator v. Yale-New Haven Hosp.</u>, 808 A.2d 1149, 1150-51 (Conn. App. 2002) (affirming grant of motion to strike IIED claim when the plaintiff, a therapist, alleged that a supervisor had "falsely accused him of endangering a patient's life").  The Superior Court "appears to be divided on the issue of whether making false accusations regarding unlawful or criminal behavior" qualifies as outrageous conduct, <u>Kontos v. Laurel House, Inc.</u>, No. CV065001808S, 2012 WL 429624, at *3 (Conn. Super. Jan. 17, 2007), but no case has been cited or found that recognizes a claim based on an accusation of non-criminal conduct when the accusation was directed to the plaintiff alone (rather than being publicized).  The Superior Court, too, has regularly dismissed claims that allege accusations far more serious than the one here.  <u>See, e.g., id.</u> at *1, *5 (dismissing the plaintiff's IIED claim, which alleged that his employer falsely accused him of sexual harassment and summarily terminated his employment).[4]

---

[4]One unpublished case holds that an employer who accused an employee of lying behaved sufficiently outrageously, but the accusation was made in the presence of other employees.  <u>Ferraro v. Stop & Shop Supermarket</u>, No. CV960388031 (Conn. Super. May 24, 2000).  Here, there is no allegation that Grove Hill publicized

As for the conduct in which Grove Hill engaged before firing the plaintiff, it likewise fails to meet the stringent standard of extreme and outrageous conduct.  Groth alleges that she was exposed to "loud swearing and abusive language," but "yelling at a coworker and using foul, harsh and insulting language . . . is not . . . extreme and outrageous behavior."  <u>Burke v. State Dep't of Children & Families</u>, No. MMXCV0650000409S, 2010 WL 797286, at *3 (Conn. Super. 2010).  Groth also alleges that Grove Hill treated her "in a degrading and hostile fashion" during her employment, but this assertion is so devoid of factual content as to be little more than a label.

Groth advances one more allegation that requires discussion.  Her complaint states that after she notified her employer about her difficulty in wearing the earpiece, she was "exposed to . . . violent conduct that was directed at her."  ECF No. 16, at 3.  Physical violence or the threat of it can qualify as outrageous conduct.  <u>See Russo v. City of Hartford</u>, 184 F. Supp. 2d 169, 192 (D. Conn. 2002).  But the formulation "exposed to . . . violent conduct that was directed at her" is so lacking in meaning as to fail to put the defendant on notice of what is alleged.  What, exactly, is "violent conduct," and what does it mean to "direct"

---

the reason for Groth's termination.

violent conduct at another person?[5]  Without knowing more, the
Court cannot adequately evaluate the claim, and the defendant
probably cannot identify the incident or incidents to which Groth
refers.

Groth fails to identify any case law tending to undermine
these conclusions.  She relies exclusively on Karlen v. Westport
Bd. of Educ., No. 3:07 Civ. 309 (CFD), 2010 WL 3925961, at *19
(D. Conn. Sept. 30, 2010), which, she says, stands for the
proposition that "deliberate actions taken by an employer could
constitute intentional infliction of emotional distress."  ECF
No. 30, at 16.  Noting that Grove Hill "did take deliberate
actions to affect the Plaintiff's position and her well-being,"
she asserts that her complaint survives under Karlen.  This
argument is unconvincing.  It is true that an employer's
deliberate actions can give rise to IIED liability, but those
actions must be extreme and outrageous as well as deliberate.  No
precedent supports the conclusion that the actions pleaded in the
complaint were extreme and outrageous, so Groth's IIED claim will
be dismissed without prejudice.

C. Count Three: NIED

To state a claim for NIED, "the plaintiff has the burden of

_____

[5]It is worth noting that the plaintiff's initial complaint
alleged that she was "exposed to . . . violent conduct."  ECF No.
1-1, at 4.  In response to the defendant's first motion to
dismiss, she amended the complaint by adding "that was directed
at her."

17

pleading that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm." Menard v. People's Bank, No. CV970544627S, 1998 WL 177536, at *3 (Conn. Super. Apr. 6, 1998).  An employee's claim for NIED cannot be predicated on employer conduct that occurred in the context of a continuing employment relationship. Urie v. Yale Univ., 331 F. Supp. 2d 94, 98 (D. Conn. 2004).  Nor can it be predicated on "the mere act of firing an employee," even if done with ill motive. Parsons v. United Tech. Corp., 700 A.2d 655, 667 (Conn. 1997).  The focus, rather, is on the manner in which the firing is carried out.  If it is accomplished in a manner likely to cause emotional distress – for instance, in "an inconsiderate, humiliating or embarrassing" way – termination can give rise to a claim. Id.

Here, almost all the plaintiff's allegations concern either conduct that occurred while she was an employee or Grove Hill's wrongful motivation for firing her.  These events do not support an NIED claim.  The only allegation in the complaint relating to the manner in which Groth was fired indicates that Grove Hill did not advise her of the ground for termination until two hours after it gave initial notice of termination.  Groth points to no case permitting a claim on remotely similar facts; most relate to needless publicity surrounding termination. See, e.g., Mulkin v.

18

Anixter, Inc., No. 3:03 Civ. 901 (RNC), 2004 U.S. Dist. LEXIS 1875, at *8 (D. Conn. 2004) ("He alleges that defendant needlessly publicized his firing, falsely stating that he was guilty of dishonesty, and thus publicly humiliated him, when it knew or should have known that this would cause him severe emotional distress.").

Groth argues that this analysis employs too narrow a definition of "termination."  As she sees it, termination is not a single event, but a "process."  Here, that "process" embraces not just her firing, but earlier occurrences like Grove Hill's trying to prevent her from complaining to Human Resources and falsely accusing her of mismanaging deposits.  Groth asserts that Grove Hill undertook these actions in an inconsiderate manner, so they can support a claim.

Groth fails to cite any legal authority that supports this argument, and all the authority I have located is to the contrary.  Perodeau v. City of Hartford, 259 Conn. 729 (2002), the leading Connecticut case on NIED in employment, explicitly distinguishes termination (in some circumstances, actionable) from "disciplinary or investigatory action arising from actual or alleged employee misconduct" (never actionable).  Id. at 769. The Connecticut courts have relied on this language to hold that disciplinary actions short of termination (but arguably leading up to termination) cannot form the basis of an NIED claim.  See

Day v. Seacorp, No. 550385, 2002 WL 31050891, at *7 (Conn. Super. Aug. 13, 2002) (citing Perodeau's "disciplinary or investigatory action" phrasing to hold that plaintiff's suspension without pay for alleged malfeasance was not part of her termination and therefore not actionable); Michaud v. Farmington Comm. Ins. Agency, No. CV010806951S, 2002 WL 31415478, at *1, *4 (Conn. Super. Sept. 25, 2002) (reduction in plaintiff's hours and criticism of her job performance in the month leading up to her firing were not part of her termination); see also Dickinson v. Merrill Lynch, Pierce, Fenner & Smith, 431 F. Supp. 2d 247, 260-61 (D. Conn. 2006) (defendant's order to plaintiff to leave work and cease contacting clients, which occurred some three weeks before plaintiff was fired, was not part of the termination process).

These decisions comport with Perodeau's language, and they also comport with its reasoning.  The Perodeau court feared that extending the tort of NIED to the workplace – where employees should expect occasional unfair treatment and hurt feelings – would invite a steady flow of specious lawsuits from embittered workers.  Perodeau, 259 Conn. at 758.  If every termination could be traced back to the first hint of ill will between the employer and the former employee and held to embrace all the events in between, Perodeau would have no meaning.

Here, the "termination" events Groth identifies are properly

20

classified as "disciplinary or investigatory action[s] arising from actual or alleged employee misconduct" and are not actionable under <u>Perodeau</u>.  Accordingly, the NIED claim will be dismissed with prejudice.

D. <u>Count Four: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Plaintiff seeks to recover for breach of the implied covenant of good faith and fair dealing.  There is no allegation that the parties entered into an express contract limiting Grove Hill's ability to terminate plaintiff's employment.  Rather, the complaint alleges that "as a result of the employment relationship which existed between the plaintiff and the defendant, the defendant promised to act in good faith toward the plaintiff" and assumed the obligation not to "terminate the plaintiff without a fair and honest cause."  ECF No. 16, at 13. The complaint identifies no words or conduct on the part of Grove Hill that caused this agreement to come into being.  Without some affirmative indication from Grove Hill that it was accepting a limit on its ability to terminate Groth's employment, no implied contract existed.  <u>See Mulkin</u>, 2004 U.S. Dist. LEXIS 1875, at *4 (finding that the plaintiff "just barely" stated a claim for breach of implied contract because he alleged that his employer informed him of a notice-and-cure policy relating to employee misconduct).

The Connecticut Supreme Court has recognized one exception

21

to the general rule that an employee terminable at will may be fired for any reason.  If an employer's reason for dismissal is "demonstrably improper" because it violates some important public policy, the employee may recover for wrongful termination. Sheets v. Teddy's Frosted Foods, Inc., 427 A.2d 385, 388 (1980). In Sheets, for example, the plaintiff, a quality control director for the defendant, was fired because he insisted that his employer comply with laws relating to food labeling.  Id. at 386. The court determined that putting the plaintiff "to an election whether to risk criminal sanction or to jeopardize his continued employment" ran so counter to the public interest as to warrant limiting the employer's power to terminate.  Id. at 389.

There are important limits to the rule of Sheets.  Of relevance here, if a statute already provides a private right of action intended to vindicate the relevant public policy, the claim will fail.  Stoffan v. SNET, 4 F.3d 364, 380 (D. Conn. 2014).  Here, the plaintiff identifies no public policy violated by her employer except the policy that is already vindicated by the ADA and CFEPA.  See id (Sheets held not to provide a cause of action in circumstances identical to these because "in Connecticut, the important public policy of preventing disability discrimination in the workplace is adequately addressed by the presence of the ADA and CFEPA" (internal quotation marks omitted)).  It is no answer that Groth might be unable to obtain

relief under these statutes.  What matters is that the laws
vindicate the public interest in rectifying workplace
discrimination, not that they vindicate this particular
plaintiff's claim.  Sheets does not extend protection to
plaintiffs in discrimination cases who narrowly miss protection
under the antidiscrimination statutes themselves.  Such a state
of affairs would undermine policy judgments already made by the
legislature and permit litigants to evade statutory procedural
requirements, such as exhaustion rules, by bringing common law
instead of statutory claims.  See Kilduff v. Consential, Inc.,
289 F. Supp. 2d 12, 19 (D. Conn. 2003) ("The wrongful discharge
cause of action is not intended to be a catch-all for those who
either procedurally or on the merits fail to establish a claim
under existing discrimination statutes . . . .").  Plaintiff
identifies no other public policy that could support her claim.
Accordingly, the claim will be dismissed with prejudice.

E. Count Five: Violation of CUTPA

     It is not clear whether Groth is opposing Grove Hill's
motion to dismiss her claim under CUTPA, but the motion must be
granted in any event.  To state a claim under CUTPA, a plaintiff
must allege that the defendant's misconduct occurred "in a trade
or commerce." Drybrough v. Acxiom Corp., 172 F. Supp. 2d 366,
369 (D. Conn. 2001).  Though an employer "may engage employees
for the purpose of promoting trade or commerce, the actual

employment relationship is not itself trade or commerce for the purpose of CUTPA."  <u>Id</u>.  Firing an employee falls within the employment relationship, <u>id</u>. at 368, 370, and no conduct on the part of Grove Hill even arguably spills out of the employment context and into trade or commerce.  The claim will therefore be dismissed with prejudice.

III. <u>Conclusion</u>

Accordingly, the defendant's motion to dismiss is hereby granted.  The claims under the ADA and CFEPA and the IIED claim are dismissed without prejudice.  The rest of the claims are dismissed with prejudice.

So ordered this 15th day of July 2015.

/s/
Robert N. Chatigny
United States District Judge

24